**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALLEN ROBERT WILLICH,

    Petitioner,

vs.                                            Case No. 3:13-cv-1387-J-32MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

    Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1) (Petition).[1] Petitioner challenges his 2009 state court (Duval County, Florida) judgment of conviction and sentence for one count of attempted first degree murder. Petitioner is serving a life sentence. He challenges the judgment of conviction and sentence on nine grounds, all premised upon allegations of constitutionally ineffective assistance of counsel. Respondent Secretary of the Florida Department of Corrections filed her response. See Respondent's Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Doc. 20) (Response).[2] On September 20, 2016, the Court entered an

---

[1] Citations to Petitioner's filings refer to the page numbers assigned by the Court's electronic case filing system.

[2] The Court refers to the exhibits attached to the Response as "Ex."

order directing Petitioner to either file a reply or a notice advising the Court that Petitioner did not intend to file a reply. (Doc. 22). On October 19, 2016, Petitioner filed a letter that the Court construes as his notice of intent not to file a reply. (Doc. 26-1). The case is ripe for review.

## II.   Evidentiary Hearing

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## III.   Standard of Review

"A state prisoner's § 2254 habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996" (AEDPA). Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting

2

Greene v. Fisher, 132 S. Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[3] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).
>
> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, —— U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013).

---

[3] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)).

"[A] federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) 'refers only to a decision' and does not 'requir[e] a statement of reasons.'" Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (quoting Harrington v. Richter, 562 U.S. 86, 98 (2011)). When the last adjudication on the merits "'is unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[ ] there was no reasonable basis for the state court to deny relief.'" Id. (quoting Richter, 562 U.S. at 98). "'[A] habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court.'" Id. (quoting Richter, 562 U.S. at 102).

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state supreme court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

Id. at 1239.

## **IV. Ineffective Assistance of Counsel**

Regarding claims of ineffective assistance of counsel, a petitioner "must meet both the deficient performance and prejudice prongs of Strickland." Wong v. Belmontes, 558 U.S. 15, 16 (2009) (per curiam) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

4

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.
>
> With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Richter, 562 U.S. at 104 (citations and quotations omitted). Because both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

5

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citations and quotations omitted). Thus, the standards created by Strickland and § 2254(d) are both highly deferential, "and when the two apply in tandem, review is 'doubly' so[.]" Harrington, 562 U.S. at 105 (quoting Knowles, 556 U.S. at 123). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## V. Findings of Fact and Conclusions of Law

As an initial matter, the Court notes that Petitioner alleges trial counsel was ineffective for violating the Federal and State Constitutions. (See Doc. 1 at 6, 11, 15, 18, 22, 27, 31, 34, 38). To the extent Petitioner attempts to assert claims based purely on a violation of the Florida Constitution, such claims are not cognizable in a federal habeas petition and are denied. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

**A. Ground One**

Petitioner argues trial counsel was ineffective for failing to object to a juror who appeared to be sleeping during the testimony of the victim. Petitioner raised this claim in his amended motion for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 (Amended Rule 3.850 Motion) in state trial court. Ex. K at 4-7. The state trial court summarily denied Petitioner's claim. Ex. M. The First District Court of Appeal (First DCA) per curiam affirmed without a written opinion. Ex. Q. Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Therefore, Petitioner is not entitled to relief on ground one.

### B. Ground Two

Petitioner argues trial counsel was constitutionally ineffective for failing to challenge the trial testimony of witness Patricia Salamanca with her prior inconsistent statement.   Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court.  Ex. K at 7-10.   The state trial court summarily denied the claim (Ex. M) which was overturned by the First DCA because the claim was not conclusively refuted by the record.  Ex. Q.   On remand the state trial court held an evidentiary hearing and again denied the claim.  Ex. S.   The state trial court found that

> counsel was clearly aware of Salamanca's inconsistent statement at the time of trial.  The jury heard that Salamanca's story changed or may have changed. However, if counsel continued to confront Salamanca with her inconsistent report to Officer Miller, it is likely that Salamanca would have continued to maintain that she had not heard Lee's statement first hand.  Such a course would have only served to prejudice the defense as the witness would have emphasized that she had no direct knowledge of the other suspect's incriminating statement.  Moreover, highlighting Salamanca's inconsistency could have provided further support for the State's contention that the Defendant ordered his friends and family to lie to authorities on his behalf. Counsel also had a reasonable fear of opening the door to prejudicial testimony from Salamanca that the Defendant abused her.  Therefore, it is unclear how further cross-examination would have benefitted the defense, particularly in light of the possible prejudicial testimony counsel sought to avoid.  Counsel appears to have adequately and competently excogitated his strategy on this point and therefore did not render ineffective assistance.

7

Ex. S at 3. The First DCA per curiam affirmed without a written decision. Ex. U. Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on ground two.

### C. Ground Three

Petitioner argues trial counsel was constitutionally ineffective for failing to object to an erroneous jury instruction regarding the definition of the lesser-included offense of attempted voluntary manslaughter. Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court. Ex. K at 10-12. The state trial court denied Petitioner's claim finding that "the Defendant fail[ed] to provide a basis for ineffective assistance of counsel." Ex. N at 2. The state trial court found "[t]he jury instruction . . . was not improper" and the jury was advised "of an 'intentional act', as approved by the Florida Supreme Court in State v. Montgomery, 39 So. 3d 252, 257 (Fla. 2010), and the First District Court of Appeals in Montgomery v. State, 34 Fla. L. Weekly D360 (Fla. 1st DCA 2009)." Ex. N at 1. Further, the state trial court found that

> even if there was some irregularity or error in the jury instruction . . ., this error was not fundamental error. Because the Defendant was convicted as charged, this case [was] distinguishable from any error committed in the Montgomery cases. See Joyner v. State, 41 So. 3d 306 (Fla. 1st DCA 2010). Thus, even if the defendant was correct in his argument that the instruction read was improper, his Motion still fail[ed]. "Accordingly, the erroneous

8

> manslaughter instruction here 'did not interfere with the jury's deliberative process in a way that tainted the underlying fairness of the entire proceeding' and was thus not fundamental error." Id. at 306-07.

Ex. N. The First DCA per curiam affirmed without a written opinion. Ex. Q. Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Respondent contends that resolution of Petitioner's claim depends on a question of pure state law and couching the claim in terms of a federal constitutional provision does not transform the substance of the state law claim into a federal claim. As such, Petitioner's claim is not cognizable in a § 2254 proceeding. In the alternative, Respondent contends counsel was not ineffective for failing to object to a correct jury instruction. Respondent asserts that the jury instruction was consistent with the current jury instruction approved by the Florida Supreme Court in Williams v. State, 123 So. 3d 23, 27 (Fla. 2013).

Assuming a cognizable federal claim and upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on ground three.

### D. Ground Four

Petitioner argues trial counsel was ineffective for failing to object to testimony of a Florida Department of Law Enforcement (FDLE) analyst regarding tests performed by another FDLE employee. The FDLE analyst testified to the following:

> Q I'm showing you State's Exhibit 33.  Please take a look at that.  What does State's 33 purport to be?
>
> A This is a preserved sample from the knife.
>
> Q. And specifically what was obtained from that knife, if anything?
>
> A. This knife was tested by a member of my section, and it gave positive results for the presence of blood.  A portion of that body fluid was preserved in this particular exhibit and forwarded for my analysis for DNA testing.
>
> Q I'm showing you State's 32.  What does State's 32 purport to be?
>
> A This is a swabbing from a front door.
>
> Q And did that swabbing go through the same procedure that you explained for the knife?
>
> A Yes, it did.
>
> Q Did you receive standards for the victim?  And by standards I mean something that was swabbed from the victim as well as the defendant in this case?
>
> A Yes, I did.
>
> Q And if you could please take a look at State's 29 and 30 and let the jury know whether or not those are in fact those standards?
>
> A Yes, they are.
>
> Q Did FDLE also receive some white Reebok tennis shoes with stains on them?
>
> A Yes, we did.
>
> Q And were those shoes also screened by the forensic technologists?
>
> A Yes, they were.
>
> . . .

> Q Now, referring you back to the swabbing from the knife, were you able to obtain a DNA profile from that swab?
>
> A Yes, I did.
>
> Q And did you compare that swab to the standards that you received?
>
> A Yes, I did.
>
> Q And what was the result of your examination?
>
> A The DNA profile that was obtained from the knife matched the DNA profile developed from Richard Walker.
>
> Q And did you also examine the swab for the door?
>
> A Yes, I did.
>
> Q Were you able to develop a DNA profile there?
>
> A Yes, I did.
>
> Q And were you able to examine that in comparison with the standards you were given?
>
> A Yes.
>
> Q And what profile did you come up with?
>
> A Again, it is the same result as the swabbing from the knife. The DNA profile matches the DNA profile represented as coming from Richard Walker.
>
> . . .
>
> Q And you didn't analyze any of the shoes then?
>
> A A member of my laboratory did.   She examined the shoes looking for the presence of any blood staining, and none was demonstrated.

Ex. B at 256-57, 259, 260.   Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court.  Ex. K at 12-14. The state trial court summarily denied Petitioner's

11

claim. Ex. M. The First DCA per curiam affirmed without a written opinion. Ex. Q. Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, including that Petitioner's own trial strategy and testimony conceded the results of the DNA testing, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on ground four.

### E. Ground Five

Petitioner argues trial counsel was ineffective for failing to seek independent testing of the "getaway" car's steering wheel for the presence of the victim's blood. Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court. Ex. K at 15-18. The state trial court summarily denied Petitioner's claim. Ex. M. The First DCA per curiam affirmed without a written opinion. Ex. Q. Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on ground five.

### F. Ground Six

Petitioner argues trial counsel was ineffective for failing to obtain the deposition transcript of witness Patricia Salamanca until the day of trial. Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court.  Ex. K at 19-21. The state trial court summarily denied Petitioner's claim.  Ex. M.  The First DCA per curiam affirmed without a written opinion.  Ex. Q.  Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, Petitioner is not entitled to relief on ground six.

### G. Ground Seven

Petitioner argues trial counsel was ineffective for failing to seek independent testing of a shoeprint discovered at the crime scene. Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court.  Ex. K at 21-22. The state trial court summarily denied Petitioner's claim.  Ex. M.  The First DCA per curiam affirmed without a written opinion.  Ex. Q.  Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, which included Petitioner's own testimony that the shoeprint was his (Ex. B. at 294-98), the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Petitioner is not entitled to relief on ground seven.

### H.  Ground Eight

Petitioner argues trial counsel was ineffective for failing to object to the admission of the 911 taped call because it lacked a proper foundation. Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court.   Ex. K at 22-25. The state trial court summarily denied Petitioner's claim.   Ex. M.   The First DCA per curiam affirmed without a written opinion.  Ex. Q.   Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In fact, a proper foundation was laid for the admission of the 911 taped call.   Prior to the State publishing the 911 taped call to the jury, the victim who made the call to 911 testified to the following:

> Q Now, you said that you did in fact call 911; is that correct?
>
> A Yes, sir.
>
> Q I'm showing you State's Evidence 34.   Do you recognize that?
>
> A Yes, sir.
>
> Q Did you have the opportunity to listen to it?
>
> A Yes, sir.

14

>   Q Did you initial it?
>
>   A Yes, sir.
>
>   Q Is that a copy of the 911 call that you made that night?
>
>   A Yes, sir.

Ex. B 155-56.   Therefore, Petitioner is not entitled to relief on ground eight.

### I. Ground Nine

Petitioner argues trial counsel was ineffective for failing to call Officer Barker, Officer Gaston, and Officer Wolcott (collectively called "LEOS") to testify about a prior inconsistent statement made by the victim.   At trial, trial counsel acknowledged that the LEOS were not under the defense's subpoena, but were listed by the State.   Ex. B at 266.   The trial counsel presumed the LEOS would be called by the State as witnesses, and he would then have the chance to cross-examine the LEOS.   Id.   However, the State did not call the LEOS as witnesses.   Id.   Nevertheless, the parties and the state trial court agreed to read to the jury a portion of a police report written by Officer Von Eiff that was based on Officer Gaston's representations.   Id. at 310-14.   The following statements were read to the jury: "The victim advised the suspect and the other unknown black male went to the victim's house.   They knocked on the front door.   The victim stated that he let them both in and offered them each a drink.   They both turned down the offer for the drink."   Id. at 316-17.   Further, "[t]he victim stated that the suspect then started stabbing and cutting him.   The victim did state that the unknown black male had no part in the crime and was just present."   Id. at 317.

Petitioner raised this claim in his Amended Rule 3.850 Motion in state trial court. Ex. K at 32-37. The state trial court summarily denied Petitioner's claim.   Ex. M.   The

First DCA per curiam affirmed without a written opinion. Ex. Q. Therefore, there is a qualifying decision under the AEDPA from the state appellate court that requires deference.

Upon thorough review of the record, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on ground nine.

## VI. Conclusion

The Court has considered Petitioner's claims and reviewed the state court record. After due consideration, it is

**ORDERED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.[4] Because this Court has determined that a

---

[4] This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, a certificate of appealability is not warranted.

       certificate of appealability is not warranted, the Clerk of the Court shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of March, 2017.

                                          TIMOTHY J. CORRIGAN
                                          United States District Judge

sflc
c:
Allen Robert Willich
Counsel of Record